The Supreme Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good morning, everyone. We have a very long calendar today, so please be mindful of your time. The cases will be called in the order listed on the docket. The first case, Navarrijo-Camo v. Bondi, has been submitted on the briefs. The first case on the calendar for argument is Cyrille v. Bondi. Good morning, counsel. Good morning, Your Honor. If it pleases the Court, my name is David Schlesinger. I represent the petitioner, Bernard Cyrille. At bottom, the BIA's final order contains a panoply of legal errors, so many so that this Court has many different jurisprudential permutations that it could take to grant Mr. Cyrille's petition for review. But with the Court's indulgence, I'd like to focus on one particular path, beginning with the BIA's erroneous nexus determination. At a bare minimum, the BIA erred because it applied an incorrect standard of review when reviewing the nexus determination that the immigration judge made. And this was reaffirmed recently by this Court in Umana-Escobar v. Garland, which ironically the government itself cited too in its supplemental brief. Umana-Escobar held that applying an incorrect nexus standard of review, in this case clear error as opposed to de novo, was a per se ground for reversing that determination. So, Mr. Schlesinger, I've read that part of Umana-Escobar several times, and I'm not totally sure I understand the distinction it's drawing between it. So, as I read it, the factual question of what motivated the persecutors is reviewed for clear error, and the legal conclusion as to nexus is reviewed de novo. Is that your understanding? That's correct, Your Honor. And what is the practical difference between those two things? So here the IJ said that there's no evidence as to who these people were and their motive is unknown. So if that's a factual finding, how could you possibly conclude that there was nexus if you have a factual finding that you don't know what the people's motive was? Well, I would point to the BIA's language itself on AR3, which says, we review for clear error the immigration judge's determination that the respondent did not establish the requisite nexus between a protected characteristic and the harm you fear. I think that's very similar to the language that this court in Umana-Escobar found objectionable, which is essentially it goes to the ultimate determination of nexus, not simply just the underlying factual findings. But I guess my question is what is there – what does the ultimate determination of nexus entail beyond the factual finding when the factual finding is we have no idea what the people's motive was? Sure. And as Your Honor knows, it's a mixed question of law and fact. So you do have those motivations coupled with the actual substantive law. And so I think here what's important is that the – even when you look at the substance as opposed to the standard review, the BIA erred in determining, apart from the standard review issue, that there wasn't action on account of protected grounds. In this case, family as a social group, Mr. Cirilla's nuclear family or his mother's nuclear family, and imputed political opinion, imputed to him through his mother's active participation in a Haitian political party. But how – I mean, so can you sort of sketch out the opinion that the board could have written, if you were writing the board opinion, right, the way that you wanted it to come out? Sure. And they say, okay, we have this factual finding that the motive of the attackers is unknown, and we have to review that for clear error, and assume they don't find it's clearly erroneous. And then they say, nonetheless, since we can review nexus de novo, we conclude there is nexus because – what would they then say? Well, I do think, even if you want to consider the factual findings themselves, Your Honor, that there was clear error because the BIA did overlook actual evidence in the record showing that – and in particular, I would point to AR 201 and 202, which is a translation of a judicial document on file in Haiti that was filed contemporaneously with the incident itself. Mr. Schlesinger, what's our standard of review of the BIA's clear error determination? Clear error – any type of factual findings, Your Honor, are reviewed for substantial evidence. So – but the nexus determination as a whole – we have to defer to the agency, right? If you're not compelled to conclude to the contrary, Your Honor, but I do suggest that AR 201 or 202 are very important parts of this record because it shows that contemporaneous to the incident itself, there was an official judicial report lodged. And the judicial report mentioned, in particular at the bottom of AR 201, that all the members of the family have been subjected to vicious persecution because of their political opinions. And then on the next page, AR 202, that this incident happened after a political meeting where Julia Chanson and members of her family categorically refused to participate in a political protest with the goal of destabilizing the administration in power. So that's evidence of the BIA overlooked in terms of nexus. If you're concerned about reviewing anything of a factual nature, this is very compelling evidence that was overlooked. And then you couple that with the incorrect standard of review. It leads this Court, I think, to having to reverse or vacate regarding nexus. And that brings me to the second part of the path that I've suggested, which is that the BIA also erred in determining that Mr. Cirile reasonably could have relocated within Haiti. This analysis was flawed because the BIA only seemed to consider whether Mr. Cirile had the capability of relocating. But it didn't separately consider whether it was reasonable for him to do so. And it further erred because it didn't consider all the multiple factors set forth in the applicable regulations that this Court in a multitude of cases, such as a free AV. Isn't this question, Mr. Schlesinger, downstream of any concern about the standard review of persecution? What standard are you asking us to review the BIA's persecution determination under? Are you referring, Your Honor, to the past – The de novo substantial evidence, yeah. Past persecution is a separate concept. I guess I'm referring to the well-founded feature fear determination, which the BIA decided solely on the basis of that. But if the persecution is – I think you're asking us to review persecution – well, what? For substantial evidence or de novo? There's a case at the Supreme Court dealing with this. I do know that my time is entering into what I hope to reserve for rebuttals. I just want to note that, but I would like to answer your question. Could you answer the question, please? Certainly, Your Honor. Persecution as a concept, whether it's past persecution or a well-founded feature fear of persecution, overall is reviewed for – typically reviewed for substantial evidence. But the legal components of those questions are reviewed de novo. And as we discussed earlier, Your Honor, any factual – underlying factual determinations are reviewed for substantial evidence. Okay. Maybe when you're back, I guess I'd like to hear whether and how you assign error to that upstream persecution issue, which then would inform the downstream questions of relocation and future fear. Certainly, Your Honor. Thank you. Thank you, counsel. We'll hear from the government. May it please the court. I'm Jonathan Robbins here on behalf of the Respondent Attorney General. Good morning to all of you. Good morning. The key question before the court today is whether the record compels reversal of the agency's denial of asylum, withholding of removal, and cat protection. And it sounds like Your Honor is most interested in the question regarding the legal standard regarding the nexus findings. So I want to just sort of address that at the outset. Your Honor is correct that under the law, the factual findings pertaining to motive made by the immigration judge are reviewed for substantial evidence. And I think Your Honor's question had to do with what is left in the law to do after that. And the answer is not a whole lot. There's not a lot of legal analysis left to do if the finding is that there is no motivation, right, because it doesn't take a lot of legal analysis to say that zero doesn't meet a standard. But it comes into play more if there's a finding of some motivation. Then there's a question, well, okay, how much does the motivation, does it meet the one central reason standard, right? That's the quintessential mixed question of fact and law. When the facts are undisputed and you have a quantum of evidence, does that quantum of evidence meet the standard? But I don't know that you would need to get into that legal question if there's no quantum of evidence as there is here. So is it your view that the board's misstatement of the standard is harmless error here? It is. In fact, one of the things that the Omana-Escobar case pointed out was that it needed to remand because the board hadn't made clear. It acknowledged that maybe the board understood the standard but articulated it in the wrong way. But the decision didn't make it clear that it applied the right standards to the right things. That's not a concern here because the board's decision makes very clear what it's talking about. Because after it cites the standard, it says, quote, So it's clear that it's talking about the record support for motivation. It goes on to say, in that regard, the record supports, so again getting into the record evidence, the immigration judge's finding that the record lacks evidence that a political opinion has been or will be imputed to the respondent based on political opinion. So it's clear that what the board is looking at is the evidence of motivation and reviewing the IG's determination that the record lacked evidence in that regard. Did you make a harmless error argument in your brief? I didn't understand the brief to be making that kind of an argument. Or at least not in the terms of harmless error. Well, I was responding to Your Honor's question about Umana Escobar's applicability. Understand that this case came out, this board decision was issued before Umana Escobar. So in 1984, when the Supreme Court issued its decision in INS against Elias Zacharias, that was the Supreme Court's seminal nexus case. And there were two main takeaways from that case. The takeaways were, one, that when we're talking about nexus, what we're talking about is a motive requirement. And then the second thing we take from that case is that's the case where the Supreme Court applied the substantial evidence standard in that case. So for many, many years before Umana Escobar, the board was maybe using loose language, sort of combining the terms nexus and motive, because the Supreme Court had said, basically, that nexus was motive. And so Umana Escobar takes the board, I think, to task for not being as precise about identifying the bifurcation in the analysis. But very often in cases – I mean, this case is very common in cases before Umana Escobar where the board wasn't being as precise in its language. But I don't think it's an indication that the board actually erred or misunderstood the standard. I mean, it wasn't the board's own authority prior to Umana Escobar? Didn't it hold that it was also de novo for legal questions? Yes, and I don't think the board here is suggesting otherwise. I just think it's imprecise language. It often says we review the nexus finding for clear error, and then it usually goes into motivation. But I think the reason it was doing that was because nexus and motive were sort of loosely used interchangeably. But I don't think there's any indication here that the board misunderstood the standard overview. It goes right into the factual findings regarding motivation, and that is supposed to be reviewed for clear error. So I don't think there's any error here. I think you could maybe accuse the board of using imprecise language in saying that clear error applies to a nexus, overall nexus holding, without clarifying that what it's talking about is the motivation for the factual findings. But then because it goes on to do that, I think if you read it in context, it's clear the board understands that clear error is supposed to apply to motivation findings, a fact. And I do want to make one thing clear that I think Umana Escobar doesn't entirely make clear. The board will review that final determination about quantum of evidence applying to a legal standard under its regulations de novo, but I'm not sure that the court would review that de novo. That's a mixed question of fact and law, and this court obviously isn't governed by board regulations. It's governed by what the Supreme Court has said about mixed questions of fact and law, and I'm sure your honors have at least a passing familiarity with the U.S. Bank decision where the Supreme Court has said that the standards of review that this court applies, it really turns on the nature of the mixed question. Not every mixed question is built the same. Some of them lean more factual where the facts are doing the work, and some mixed questions are more legal, and the standard of review will turn on which way the mixed question leans. And I think it should be apparent that the type of mixed question that is presented when you're looking at, you know, how much motivation meets the one central reason standard, what role did the motivation play, that's clearly a mixed question that leans factual. So I think your court would still review that determination under the substantial evidence standard of review. Now, that's not to say that there aren't pure legal questions that might be associated with a nexus finding. If somebody, for example, was challenging what does one central reason mean in the statute, that's a question of statutory interpretation. That's something the court would look at as a pure legal question. That's not a mixed question. I mean, I take the point that before Imana Escobar, maybe the level of precision in how this was described wasn't as high, but the first sentence of the board's discussion seems not just imprecise, but just flatly contrary to what they're supposed to do. They say we review for clear error the IJ's determination that the respondent did not establish the requisite nexus. I mean, I don't see how to read that other than as nexus. The whole thing is being reviewed for clear error. That's fair. If you believe that this is error and if you ignore the context where it goes right into the factual findings and you think that that's error, then I would argue it's harmless error. I would argue that it's not error because when read in context, I think the board is just trying to – is conflating the concepts of motive and nexus. And the reason it's done that is because that's what the Supreme Court said in INS against Elias Zacharias. And so if it's a question of harmless error, what do we do with – there's a passage in Imana Escobar where they quote Ornelas Chavez, where the board applies the wrong legal standard, the appropriate relief from this court is remand for reconsideration under the correct standard, not an independent review of the evidence. I take the point that given the findings here, the independent review of the evidence would not be very difficult. But that's what we've said we're supposed to do. Well, in Imana Escobar, the reason the court remanded was it says we can't tell – we have no indication from the record that the board did it correctly. I think whereas here you do have an indication that the board did it correctly, that's not necessary. I mean the board talks – applies clear error standard and then gets into the factual findings. So I think you can look at – Imana Escobar at least seems to suggest that the court can look at the findings and see if there is an indication that might prevent a remand. And I think we have that in this case because of the passages that I just described. And again, it gets back to your honor's point. I'm not sure how remand would result in anything other than a foregone conclusion. If the factual finding is that there's zero motive, how can there be any legal conclusion left to conduct to say that no motivation can't meet the legal standard? I mean the Supreme Court has also said we don't play a ping pong game with the agency, right? We don't remand for things that are foregone conclusions. One of the exceptions to remand under the Chenery Doctrine is if remand is futile. So if the finding is that there's no motivation, how would it not be futile to send it back for the board to go through the sort of useless formality of saying, well, that doesn't meet the legal standard under de novo standard? Well, is it a question of fact or a question of law whether the attackers who seem to have identified his family and fired into the house in which he was living, given the context, whether that was a sufficient nexus, whether that established a family nexus? Well, I want to be clear, Your Honor. I don't think that this case implicates a mixed question. I think this is a quintessential factual dispute. The petitioner is arguing that the evidence shows that he established a particular motive and the agency and the government don't agree with that. I don't see that that's a mixed question at all. That seems to me to be a pure factual dispute. Remember, a mixed question only comes in when you're – I mean I guess – so if I thought that the record would compel us to think that at least his mother was targeted on the basis for a political opinion, what's the remaining link left? Is that a factual or legal question about whether the targeting extended the nexus to her son? I think that's still a factual question. And the reason I think that is this Court has case law that deals with situations where a family member is targeted for harm and whether or not an individual can base a claim or can make a claim out for asylum based on that family's harm. What the Court has said about that is that the harm to a family member may be relevant if the individual can show that the harm to the family member was closely tied to them in some way. And here, one of the findings of the agency was that the petitioner didn't show that these individuals had any interest in him whatsoever. They appeared at this incident where these unknown bandits approached the house. They said his mother's name, but there's no indication that they even knew he was in the house. There's no indication at anywhere in the record, and he even concedes this in his testimony, that he doesn't really know anything about them. He doesn't know who they are. He was speculating that it was on account of political opinion because he sort of deduced that that's what it had to be. But he doesn't really have any information on that. And so that really seems to be a factual question, whether or not this was closely tied to him or whether he established as a matter of fact that these events were tied to him in some way also seems to be a question of fact, not a legal question. And so it seems to me that that would also be reviewed under the substantial evidence standard of review. I see that I'm into the red. I'm happy to answer any more questions if you have them. Thank you, Counsel. Thank you for your time, Your Honors. Your bottle. I did promise Judge Johnstone that I would address the downstream effects of past persecution. If I could very briefly, Your Honor, with your indulgence, if I could briefly address Judge Miller's concern about harmless error. I should note that the government often refers to sites of cases such as Zamorano v. Garland and Park v. Garland in the harmless error context. I would suggest that those are very limited examples of when harmless error can apply in this context in review of BIA final orders. Almost always, as this Court has held, the countervailing considerations that the Supreme Court set forth in Inez v. Ventura and Gonzalez v. Thomas compel this Court to remand to the BIA so that it could address in the first instance whether the legal error it made earlier was erroneous. If I could quickly pivot to Judge Johnstone's concern, the downstream effects of determining that the BIA was erroneous in determining that there had not been past persecution would directly affect the reasonable relocation analysis because there then becomes a rebuttable presumption based on the past persecution that it would not be reasonable to relocate. So I don't know if that fully addresses your concern, Your Honor. Well, I guess then are we reviewing it? Are you asking us to review it for substantial evidence or de novo? And how? I think it's a mixed analysis, Your Honor, in that the overall determination of whether it's past persecution, whether it's well-founded future fear of persecution is substantial evidence, but there are legal components within it that are reviewed de novo. Isn't that the question that's presently before the Supreme Court? I believe so, Your Honor. If the court is interested in hearing the party's views on that, I would certainly, speaking for myself, I'd be glad to file a supplemental brief on that and certainly on harmless error as well or any other issue that the court deems to need further written consideration. Any further questions? It appears not. Thank you, counsel. Thank you very much. Thank you both, counsel, for your helpful arguments. The case just argued is submitted for decision by the court.
judges: RAWLINSON, MILLER, JOHNSTONE